UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICAH ISHONE QUINN,

                       Petitioner,

v.

SCOTT SPRADER,

                     Respondent.

_____/

Case No. 2:19-cv-120

Honorable Gordon J. Quist

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual allegations

Petitioner Micah Ishone Quinn is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Following a jury trial in the Muskegon County Circuit Court, Petitioner was convicted of armed robbery, Mich. Comp. Laws § 750.529, unlawful imprisonment, Mich. Comp. Laws § 750.349b, and two counts of possessing a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b.   On February 23, 2015, the court sentenced Petitioner to concurrent prison terms of 21 to 40 years on the armed-robbery conviction and 10 to 15 years on the unlawful-imprisonment conviction, to be served consecutively to the two concurrent 2-year terms on the felony-firearm convictions.

On June 18, 2019, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner placed his petition in the prison mailing system on June 18, 2019.  (Pet., ECF No. 1, PageID.9.)

The petition raises three grounds for relief, as follows:

I.      THE [PETITIONER] WAS DENIED DUE PROCESS AND A FAIR TRIAL BY PETITIONER'S IDENTIFICATION BY THE COMPLAINING WITNESS COURT AFTER THE COMPLAIN[ANT] VIEWED [PETITIONER'S] PICTURE IN THE PAPER IDENTIFYING HIM AS A PERSON ARRESTED IN CONNECTION WITH THIS CASE[.]

II.     THE [PETITIONER] IS ENTITLED TO A NEW TRIAL AS HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

III.    THE [PETITIONER] IS ENTITLED TO BE RESENTENCED BECAUSE THE FACTS IN SUPPORT OF SOME OF HIS OFFENSE VARIABLE SCORES WERE NOT FOUND BY THE JURY TO BE PROVEN BEYOND A REASONABLE DOUBT, HE WAS SENTENCED PRIOR

TO JULY 29, 2015, AND THE SIXTH AMENDMENT VIOLATION ALTERED THE GUIDELINES RANGE.

(Pet., ECF No. 1, PageID.6-7.)

The following statement of the facts underlying Petitioner's conviction are taken from the opinion of the Michigan Court of Appeals:

> This appeal arises out of the robbery of a pizza delivery man, Roy Ferguson. As Ferguson was delivering an order to a house in Muskegon, defendant and codefendant Taylin Alexander Glenn followed Ferguson to the door, and defendant put a gun to the back of Ferguson's head. Ferguson was ordered to walk back to his car and to empty his pockets, which included approximately $20, his cell phone, wallet, and keys. Defendant took Ferguson's money and wallet and then ordered Ferguson into the trunk of the car. Ferguson complied. Unsure of what to do with Ferguson, Glenn and defendant drove the car while Ferguson was locked in the trunk.

> After stopping the car multiple times to physically assault Ferguson, Glenn and defendant stopped the car a final time, unlocked the trunk, and told Ferguson to count to 100 before exiting the trunk. After counting to 100, Ferguson exited the trunk and began walking to the nearest gas station to call the police.

> After a police investigation, defendant was arrested and charged with armed robbery, unlawful imprisonment, and two counts of felony-firearm. A jury convicted defendant as charged and this appeal ensued.

*People v. Quinn*, No. 326738, 2016 WL 3767491, at *1 (Mich. Ct. App. July 14, 2016).

Petitioner does not dispute the court's summary of the facts. Indeed, in the statement of facts set forth in his own memorandum of law in support of the habeas petition, Petitioner sets forth far more detail concerning the incident. The victim testified that, during the incident, which occurred on March 19, 2014, the perpetrators had him strip down to his underwear and that, in addition to the items listed by the court of appeals, they took his clothes, his belt, his Domino's jacket, and a radio. (Pet'r's Mem. of Law in Supp. of Pet., ECF No. 1-1, PageID.21, 25-26.[1]) Further, during one of the occasions on which the perpetrators removed the victim from

---

[1] Petitioner's brief includes page citations to the trial transcript. However, because the Court accepts the facts as Petitioner recites them, no transcript citations are included in this opinion.

the trunk, the perpetrators had the victim get on his knees and pray, while they held a gun to his head.   One of the perpetrators—not Petitioner—pulled the trigger, but it just clicked.   The perpetrators then said, "[H]a ha got you."   (*Id.* at 22, 26.)  The victim was hit in the jaw with the butt of the gun, and he then was hit in the teeth.  (*Id.*)  Both men hit and kicked the victim.  (*Id.* at 22.)  The victim suffered a broken nose, a black eye, and broken teeth.  (*Id.* at 26.)

According to the victim, the man who pulled the trigger was holding a black handgun, and the other man was holding a silver revolver.  The victim had not seen either man before.  (*Id.* at 22.)  The witness saw the face of the man with the silver gun for about 10 seconds, before being ordered to look away.  (*Id.*)  The man with the silver gun was the person who told the victim what to do and when to do it.  (*Id.*)  Although both men wore hoodies and the victim had only a limited opportunity to look at the perpetrators directly, the victim identified the man with the silver gun as Petitioner.  (*Id.*)

The incident occurred at night, on Tuesday, going into Wednesday.  On Friday, the victim viewed a photo lineup, but he was unable to identify anyone.  (*Id.*)  Petitioner's photograph was not in the photo lineup.  (*Id.*)  Sometime after the photo lineup, but before the preliminary examination, the victim was told that there were two confessions in the case.  (*Id.*)  During the same period, the victim saw an article in the newspaper, which contained pictures of the two suspects.  The victim thereafter was able to identify the two men.  (*Id.* at 22.)

On March 27, 2019, Detective Peter Boterenbrood advised Petitioner of his *Miranda* rights and conducted a video-recorded interview.  During the interview, Petitioner admitted that he and his codefendant, Taylin Glenn, ordered some pizza and took part in the armed robbery.  Petitioner admitted that he was the man with the silver pistol.  (*Id.* at 23.)  In addition, Petitioner made admissions to being involved with Glenn in an earlier robbery of Brian Scott, at

which time Scott's phone was stolen.  (*Id.* at 30-31.)  During the investigation, police officers traced the number from which the pizza order was made and discovered that it was made from Scott's phone, which had been stolen a week earlier.  Police traced the numbers called after the phone was stolen and identified Petitioner's phone number.  (*Id.*)  They pinged the number to track it, which led them to 1538 Hoyt Street.  Police conducted surveillance on the address, and Petitioner was arrested.  A search warrant was executed later that same day.  (*Id.*)

Petitioner was offered a *Cobbs*[2] plea agreement, with a sentence evaluation of 21 years on the armed robbery, plus 2 years for the felony firearm.  Petitioner rejected the plea agreement at the September 26, 2014, plea hearing.  (*Id.* at 24.)  However, on September 30, 2014, the first day of trial, Petitioner elected to accept the plea agreement and entered a no-contest plea.  The court accepted the plea.  (*Id.*)

On November 4, 2014, the scheduled date of sentencing, Petitioner moved to withdraw his plea.  He contended that he was not guilty, that he had been high at the time he confessed to the crime, and that he was covering for someone else.  The court allowed Petitioner to withdraw the plea and also granted his request for a different court-appointed attorney.  (*Id.* at 25.)

Trial began on January 20, 2015.  The victim again identified Petitioner as the man with the silver gun.  On cross-examination, the victim acknowledged that he had seen Petitioner's picture in the paper and that, while he had not remembered exactly what his assailant looked like, he immediately recognized Petitioner from the picture.  The victim denied that the picture had influenced his identification.  (*Id.* at 27.)

---

[2] *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993) (authorizing a judge to approve a plea agreement based on a preliminary evaluation of an appropriate sentence, so long as the defendant is permitted to withdraw the plea if, at sentencing, the court decides not to sentence in conformity with the agreement).

5

Petitioner testified at trial, denying that he had committed the offense, but admitting that he had made admissions to the police and had written an apology letter to the victim. (*Id.* at 34.)  Plaintiff contends that he was high at the time of his statement and that he felt pressured to make the statement. (*Id.*)

The jury found Petitioner guilty of the charged offenses on January 21, 2015.  On February 23, 2015, Petitioner was sentenced to the same terms of imprisonment received by his codefendant. (*Id.* at 36.)

Petitioner appealed to the Michigan Court of Appeals, raising the same three issues presented in his habeas petition.  In an unpublished opinion issued on July 14, 2016, the court of appeals denied all appellate grounds and affirmed the convictions.  Petitioner sought leave to appeal to the Michigan Supreme Court on the same three grounds.  The supreme court denied leave to appeal on May 1, 2018.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

6

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.  Discussion

#### A.  Unduly Suggestive Identification

In his first habeas ground, Petitioner contends that his right to due process was violated by the admission of the victim's identification. Petitioner argues that, because the identification followed the publication of Petitioner's picture in the newspaper, the circumstances under which it was made were unnecessarily suggestive.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). "Most eyewitness identifications involve some element of suggestion." *Perry v. New Hampshire*, 565 U.S. 228, 244 (2012). It is not enough that the identification procedure employed "may have in some respects fallen short of the ideal." *Simmons v. United States*, 390 U.S. 377, 385-86 (1968); *see also Neil v. Biggers*, 409 U.S. 188, 201 (1972). Instead, "'due process concerns arise only when law enforcement officers use[d] a procedure that is *both* suggestive and unnecessary.'" *Perry*, 565 U.S. at 238 (citing *Manson v. Braithwaite*, 432

U.S. 98, 114 (1977) (emphasis in original).  Further, even when an unnecessarily suggestive procedure was used, "suppression of the resulting identification is not the inevitable consequence." *Id.* at 239.   In such cases, "the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" *Id*. (quoting *Biggers*, 409 U.S. at 201).   "'[R]eliability [of the eyewitness identification] is the linchpin' of that evaluation." *Id.* at 239 (quoting *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977)). "The factors affecting reliability include 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Sexton v. Beaudreaux*, __ US __, 138 S. Ct. 2555, 2559 (2018) (quoting *Manson*, 432 U.S. at 114); *see also Perry*, 565 U.S. at 239; *Biggers*, 409 U.S. at 199-200.  "The 'corrupting effect of the suggestive identification' must be weighed against factors indicating that the eyewitness identification is reliable . . . ." *Williams v. Bauman*, 759 F.3d 630, 639 (6th Cir. 2014) (quoting *Manson*, 432 U.S. at 114).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable, independent of the suggestive identification procedure.  *See United States v. Wade*, 388 U.S. 218, 240, n.31 (1967).  If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred.  *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

The Michigan Court of Appeals addressed the issue in detail, as follows:

Defendant first argues that Ferguson's identification of him after seeing his picture in the newspaper constitutes an unnecessarily suggestive identification procedure that tainted Ferguson's subsequent identifications of defendant at the preliminary examination and at trial. Defendant did not raise this issue in the trial court, and is therefore unpreserved for appellate review. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We review unpreserved issues for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 762-765; 597 NW2d 130 (1999). Under the plain error standard, the defendant bears the burden of showing that: "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," "i.e., that the error affected the outcome of the lower court proceedings." *Id.* at 763.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). However, the due process protections against unnecessarily suggestive identification procedures do not apply in the absence of state action. As the Supreme Court has recently held, the "due process check on the admission of eyewitness identification [is] applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v New Hampshire*, __ US __; 132 S Ct 716, 730; 181 L Ed 2d 694 (2012) (emphasis added).

Here, defendant has not identified any act by law enforcement officers that improperly suggested that defendant was the perpetrator. Ferguson merely testified that he had seen a picture of defendant in the newspaper. Defendant has not come forth with any evidence indicating that Ferguson's viewing of the news report was arranged by law enforcement or that the police officers led Ferguson to identify defendant as the perpetrator of the crimes. Because there was no state action involved in Ferguson's identification of defendant from a picture in the newspaper, due process does not require suppression of the subsequent identifications. *Id.*

Even if we were to assume that the pretrial identification procedure was impermissibly suggestive, an independent basis for Ferguson's identification of defendant existed, thus removing the taint of the alleged impermissibly suggestive procedure. See *Williams*, 244 Mich App at 542-543[] ("If the trial court finds the procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." (quotation marks and citation omitted)). With respect to whether there was an independent basis to identify the defendant at trial, there are "eight factors that a court should use in determining if an independent basis exists:" (1) "Prior relationship with or knowledge of the defendant;" (2) "The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the alleged criminal act;" (3) "Length of time between the offense and the disputed identification;" (4) "Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description;" (5) "Any previous proper identification or failure

10

to identify the defendant;" (6) "Any identification prior to lineup or showup of another person as defendant;" (7) "[T]he nature of the alleged offense and the physical and psychological state of the victim;" and (8) "Any idiosyncratic or special features of defendant." *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998). However, these factors are not exhaustive. Id. at 117 n 12.

In the present case, Ferguson testified that he looked directly at defendant and that there was adequate lighting coming from the house where he was delivering food. Additionally, the preliminary examination was slightly longer than a month after the incident, which is considered a "relatively short period of time." *Id.* at 120. Ferguson was asked to identify the perpetrator in a photographic lineup (which did not include a photograph of defendant) and Ferguson did not erroneously select anyone in the photographic lineup. Additionally, Ferguson's description of defendant—5' 9" with a medium build—was generally accurate. While Ferguson testified that he was nervous during the offense because of the gun, he also testified that he had "a good look" at defendant and that he made a point to remember what defendant looked like in the event he needed to tell his employer or the police. Ferguson also testified that he identified defendant based on what he saw on the night of the incident and that he was sure that defendant was the individual. These factors all weigh in favor of concluding that Ferguson had an independent basis for his identification of defendant. In contrast, only two factors weigh against such a conclusion. First, Ferguson and defendant did not have a prior relationship, nor did Ferguson know defendant before the offense. Second, defendant did not identify any idiosyncratic or special features of defendant. Nevertheless, after a review of the relevant factors, the totality of the circumstances supported the admission of Ferguson's identification as an independent basis existed to remove any alleged taint of an unnecessarily suggestive pretrial identification. *Williams*, 244 Mich App at 542-543. Thus, defendant has not demonstrated that a plain error occurred. *Carines*, 460 Mich at 763.

*Quinn*, 2016 WL 3767491, at *1-2.

As is apparent from the court of appeals' opinion, the court applied the proper Supreme Court precedent in resolving the issue. Moreover, the court's application of that standard was entirely reasonable.

As the court of appeals held, Petitioner's constitutional claim fails at the first step, because he has presented no evidence that state action was involved in creating any suggestiveness. The United States Supreme Court has repeatedly held that, absent improper police or prosecutorial involvement, the Due Process Clause is not violated. *Perry*, 565 U.S. at 238 (citing *Manson*, 432

U.S. at 114).  As a result, the instant Court need not reach the question whether, under the totality of the circumstances, the identification was reliable.

Even were the Court to reach the second question, however, Petitioner wholly fails to identify error in the facts found upon by the court of appeals to support its conclusion that the identification was reliable—much less to provide clear and convincing evidence to overcome the presumption that those determinations were correct.  *See* 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531.  Indeed, in the summation of facts set forth in his memorandum of law, Petitioner effectively acknowledges that evidence on the record supported each of the factual findings reached by the court of appeals.

For these reasons, Petitioner fails to demonstrate that the state-court decision was based on an unreasonable determination of the facts or resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent.  He therefore is not entitled to relief on his first habeas ground.

B.      Ineffective Assistance of Counsel

In his second ground for habeas relief, Petitioner argues that his trial attorney rendered ineffective assistance of counsel in a variety of ways.  First, he contends that his attorney was ineffective in failing to move to suppress the victim's identification.  Second, he argues that trial counsel should have moved to suppress his confession on the grounds that it was not voluntary.  Third, he argues that trial counsel failed to ask a number of questions during trial that Petitioner believes would have altered the result.  Fourth, Petitioner asserts that counsel failed to call as alibi witnesses two individuals identified by Petitioner:  Petitioner's sister, Lynitra Quinn, and Keith Washington.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

13

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

> Although the court of appeals cited only state law, it applied the correct standard of

review to Petitioner's ineffective-assistance claims:

> To establish ineffective assistance of counsel, a defendant must show that "his attorney's performance fell below an objective standard of reasonableness," and "this performance so prejudiced him that he was deprived of a fair trial." *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). In order to establish prejudice, the defendant must establish that there is "a reasonable probability that the outcome would have been different but for counsel's errors." *Id.* at 486. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

*Quinn*, 2016 WL 3767491, at *3. Not only does the recited standard track the *Strickland* standard,

the principal state-court case cited in the decision expressly relies on *Strickland*. *See Grant*, 684

N.W.2d at 692 (applying *Strickland*, 466 U.S. 688). As a consequence, in reviewing Petitioner's

claims of ineffective assistance of counsel, the state court applied clearly established Supreme

Court precedent. The Court will consider each claim of ineffective assistance of counsel to

determine the reasonableness of the state court's application of the standard.

> 1.      Failure to Move to Suppress Identification

> Petitioner argues that trial counsel was ineffective in failing to move to suppress

the victim's identification of Petitioner as one of the perpetrators. As the Court previously

discussed, any motion would have been futile, as Petitioner was not entitled to have the

identification suppressed. Counsel's failure to make a frivolous or meritless motion does not

constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir.

2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x

309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). The Michigan

Court of Appeals therefore reasonably denied Petitioner's first claim of ineffective assistance of counsel.

2.      Failure to Move to Suppress Confession

Petitioner argues that counsel was ineffective in failing to move to suppress his confession on the ground that it was involuntary, in violation of Petitioner's rights under the Fifth Amendment.  In order to assess Petitioner's claim of ineffective assistance of counsel, the Court must first consider the merits of Petitioner's Fifth Amendment claim.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).  Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law."  *Texas v. Cobb*, 532 U.S. 162, 172 (2001) (quotation and citation omitted).  The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to *Miranda* are rare.  *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (citation omitted).

When a criminal defendant claims that his confession was rendered involuntary by police coercion, the court must inquire whether, considering the totality of the circumstances, the conduct of law enforcement officials overbore the will of the accused. *See Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). A suspect's state of mind, standing alone, cannot render a statement involuntary. Rather, coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession. *See Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986). Typically, findings of coercive police conduct involve brutality or threats of physical coercion. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991) (threats of physical violence); *Greenwald v. Wisconsin*, 390 U.S. 519 (1968) (defendant interrogated for eighteen hours without food or sleep while on medication); *Beecher v. Alabama*, 389 U.S. 35 (1967) (gun held to head of wounded suspect to extract confession); *Cooper v. Scroggy*, 845 F.2d 1385 (6th Cir. 1988) (officer struck defendant, failed to take steps to change coercive environment, and other detective threatened defendant). Nevertheless, a confession may be rendered involuntary if it is the product of psychological pressure or coercion sufficient to overbear the will of the accused. *See Fulminante*, 499 U.S. at 287-88. Among the circumstances to be reviewed by the habeas court are "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health." *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted).

The admissibility of a confession is a mixed question of fact and law, subject to plenary federal review. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Nevertheless, on habeas review, "subsidiary factual questions . . . are entitled to the § 2254(d) presumption [of correctness]." *Id.*

Petitioner argues that several circumstances weigh against considering his confession to be voluntary. Specifically, he notes that he was only 17 years old at the time of the police questioning. In addition, he contends that he was under the influence of various substances and that the police should have been aware of that fact. Further, he asserts that he was questioned in a small room by two detectives, who moved closer to him during questioning, causing him to feel threatened or coerced.

In considering Petitioner's claim, the Michigan Court of Appeals held as follows:

[D]efendant argues that defense counsel was ineffective for failing to file a motion to suppress defendant's confession because the confession was involuntary. "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). Voluntariness is a totality of the circumstances analysis, which "consider[s] factors such as: the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency." *Id.* at 264-265. Ultimately, "whether a waiver of *Miranda*[] rights is voluntary depends on the absence of police coercion." *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000). "In contrast to the voluntary prong, determining whether a suspect's waiver was knowing and intelligent requires an inquiry into the suspect's level of understanding, irrespective of police behavior." *Id.* at 636. "A very basic understanding of those rights is all that is necessary," and "[i]ntoxication from alcohol or other substances can affect the validity of a waiver, but is not dispositive." *Gipson*, 287 Mich App at 265.

Here, the interview lasted approximately two hours, defendant was 17 years old with an 11th grade education, and he had a prior juvenile record with an adult conviction for unlawfully driving away a motor vehicle. On appeal, defendant argues that his statements were involuntary because (1) he was under the influence of various substances, (2) he was 17 years old, and (3) the interviewing officers "moved closer to him, suggesting threatening or coercive behavior." Defendant's contention that the interviewing officers moved closer to defendant in a threatening or coercive manner is refuted by the record. Our review of the interview video indicates that the officers did not make any movements toward defendant in a threatening or coercive manner. In fact, the video of the interview demonstrates the opposite of a coercive or threatening environment: the officers spoke in a friendly tone, laughed, and did not question defendant in an intimidating manner. Further, defendant was offered water or pop during the interview, he was informed multiple times that he did not have to answer the questions, and he was not

17

threatened.  And, while defendant was 17 years old at the time of the interview, his age is only one of the relevant factors to be considered within the totality of the circumstances.  See *id.*  Defendant's age is outweighed by other factors such as his experience with the police and the lack of threats from the police.

With respect to defendant's claim that he was under the influence of various substances, Detective Peter Boterenbrood testified that defendant did not appear to be high in any way during the interview, that defendant did not have a glassy appearance in his eyes, and that defendant did not appear tired, exhausted, or "anything like that."  Similarly, Detective Kory Luker testified that, as a police officer, he observed people under the influence of narcotics numerous times, that one can often tell when someone is under the influence, and that defendant did not appear under the influence of narcotics in any way during the interview.  Luker further testified that defendant's eyes were not bloodshot or red, that defendant was not struggling to speak, that defendant did not appear to be lethargic, that defendant did not have difficulty walking in or out of the room, that defendant did not fall asleep, that defendant did not fall out of his chair, and that defendant was able to answer the questions coherently.  Notably, near the end of the interview, defendant was asked whether he was under the influence of drugs or alcohol, and he responded, "No."

Considering the totality of the circumstances based on the facts apparent from the record, there is nothing to suggest that defendant's statements were the product of police coercion.  *Id.* at 264-265.  Rather the record demonstrates that they were "the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Id.*  Moreover, defendant was read his *Miranda* warnings, and he stated that he understood his Fifth Amendment rights.  Therefore, defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights and a motion to suppress would have been meritless.  Because counsel will not be rendered ineffective for failure to file a meritless motion, defendant was not denied the effective assistance of counsel.  *Collins*, 298 Mich App at 470.

*Quinn*, 2016 WL 3767491, at *3-4 (footnote omitted).  Again, although the court of appeals recited only state law, the standard it applied tracked the federal constitutional standard.  Moreover, *People v. Daoud*, 462 Mich. 621, 614 N.W.2d 152 (2000), the Michigan Supreme Court case applied by the court of appeals, properly relied upon and extensively analyzed the established precedent of the United States Supreme Court.  *Id.* at 156-160.

The court of appeals rejected Petitioner's claims concerning the allegedly coercive conditions.  First, the court found as a matter of "subsidiary" fact, *Miller*, 474 U.S. at 112, based on the video recording of the confession, that the officers did not move closer to Petitioner or

18

otherwise threaten him.  As discussed, the findings of the court of appeals on this factual question are entitled to a presumption of correctness, which Petitioner must overcome by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Davis*, 658 F.3d at 531; *Smith*, 888 F.2d at 407.  Petitioner utterly fails to meet this burden.  Indeed, he makes no effort to dispute the court's summary of the video evidence.

In addition, the court found that Petitioner's claim that he was under the influence of various substances was contradicted by the testimony of the two police officials present during the confession.  Both officers indicated that Petitioner showed none of the symptoms of being under the influence of drugs or alcohol—symptoms with which they were very familiar.  Moreover, the officers asked and Petitioner expressly denied being under the influence of any substance at the time of his confession.  From these facts, the court of appeals reasonably concluded that Petitioner failed to demonstrate that he was under the influence of mind-altering substances, much less that the police should have been aware of that fact.

Finally, although Petitioner was 17 years of age, he had completed eleventh grade and had had multiple prior interactions with the police, including both juvenile adjudications and adult convictions.  As the Michigan Court of Appeals recognized, age is but one factor to be considered when evaluating the totality of the circumstances.  *Withrow*, 507 U.S. at 693-94 (citing factors).  The Supreme Court has never held that a 17-year-old may never voluntarily waive his *Miranda* rights.  As discussed, no other factor identified by Petitioner weighs in his favor.  Moreover, the interrogation in issue lasted only two hours, Petitioner was offered water or pop during the interview, and he was not threatened.

On these facts, the court of appeals' determination that Petitioner waived his rights voluntarily, knowingly, and intelligently constituted a reasonable application of clearly established

19

Supreme Court precedent.  As a result, the court also reasonably determined that any motion to suppress would have been meritless and that counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506 (6th Cir. 2007).

3.    Failure to Ask Certain Questions

Petitioner contends that counsel was ineffective in failing to ask certain questions that Petitioner requested be asked.

The Michigan Court of Appeals concluded that Petitioner had not met his burden of overcoming the presumption that trial counsel's questioning was one of trial strategy:

> [D]efendant "asserts that he asked counsel to ask certain questions during trial." This argument invokes an issue of trial strategy as "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).  "[W]ith regard to trial strategy and tactics," trial counsel has "great discretion in the trying of a case." *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994).  Further, defendant has not explained or indicated on appeal what questions he wanted defense counsel to ask.  Accordingly, defendant has not overcome the presumption that defense counsel's decisions regarding the questioning of witnesses was sound trial strategy. *Id*.  Counsel's performance did not fall below an objective standard of reasonableness in this regard.

*Quinn*, 2016 WL 3767491, at *5.

The state court's determination was patently reasonable.  As the court of appeals noted, Petitioner has never identified which questions he believes counsel should have asked, much less what testimony such questions would have elicited.  "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"  *Burt*, 571 U.S. at 23 (quoting *Strickland*, 466 U.S. at 689).  Under these circumstances, Petitioner fails to overcome the presumption that

20

counsel's decisions about which questions to amounted to reasonable trial strategy. Petitioner therefore fails to demonstrate that counsel was ineffective.

### 4.      Failure to Call Alibi Witnesses

In his final claim of ineffective assistance of trial counsel, Petitioner argues that his attorney was ineffective in failing to call his sister and a companion as alibi witnesses. The Michigan Court of Appeals held that Petitioner had failed to demonstrate that the alibi witnesses would have testified favorably:

> Defendant lastly argues that counsel was ineffective for failing to call two alibi witnesses. With respect to this alleged deficiency, defendant's affidavit attached to his brief on appeal states that he "asked [his] attorney to call [his] sister, Lynitra Quinn, as [his] alibi witness, but he did not" and that he "told [his] attorney James Marek that [he] had an alibi: Keith Washington and Lynitra Quinn." As mentioned above, the decision to call a witness is presumed to be a matter of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). The failure to call a witness only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *Id.* A substantial defense is one that might have made a difference in the outcome of trial. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). Assuming that defendant's alibi witnesses exist and were willing to testify, defendant has not provided any affidavits from these proposed alibi witnesses regarding their proposed testimony. Because "[t]here is no evidence that the alibi witness[es] would have testified favorably," *Pickens*, 446 Mich at 371, defendant has not demonstrated he was denied a defense that might have made a difference in the outcome of trial. As such, defendant has not established ineffective assistance of counsel. *Grant*, 470 Mich at 485-486.[3]
>
> [3] We reject defendant's alternative argument requesting a remand for a *Ginther* hearing because we previously denied defendant's request for a remand. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

*Quinn*, 2016 WL 3767491, at *5.

"Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Chegwidden*, 92 F. App'x at 311. As with his last claim of ineffective assistance of counsel, Petitioner fails to overcome the presumption. Although Petitioner identified

the names of the two alibi witnesses in his brief to the Michigan Court of Appeals, he did not

provide evidence concerning the content of their testimony.  Generally, habeas corpus actions are

determined on the basis of the record made in the state court.  *See* 28 U.S.C. § 2254(e)(2); Rule 8,

Rules Governing § 2254 Cases; *Pinholster*, 563 U.S. at 185-86 (underscoring the fundamental

policy of the AEDPA to "strongly discourage" petitioners from submitting new evidence in

support of their request for relief in federal court.).  Petitioner's failure to present the requisite

evidence to the Michigan Court of Appeals precludes this Court from considering anything new.

Moreover, Petitioner makes no attempt to indicate what these alleged alibi

witnesses would have said at trial.  As earlier discussed, the absence of evidence cannot overcome

the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable

professional assistance.'" *Burt*, 571 U.S. at 23 (quoting *Strickland*, 466 U.S. at 689).

For all these reasons, Petitioner fails to overcome the double deference owed to the

state court's disposition of his claim.

## C.   Sentencing Issue

In his final ground for habeas relief, Petitioner argues that the trial court judge

violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due

process, by using, to enhance his sentence, facts that had not been admitted by Petitioner or found

by a jury beyond a reasonable doubt.  Petitioner specifically argues that the trial court scored the

following Offense Variables using facts not found by the jury:  OV 3, Mich. Comp. Laws

§ 777.33(1)(d) (bodily injury to a victim); OV 4, Mich. Comp. Laws § 777.34(1)(a) (psychological

injury to a victim); OV 7, Mich. Comp. Laws § 777.37(1)(a) (involving sadism, torture, or

excessive brutality); OV 10, Mich. Comp. Laws § 777.40 (vulnerable victim); OV 13, Mich.

Comp. Laws § 777.43(1)(c) (pattern of felonious criminal activity of three or more crimes); and

OV 16, Mich. Comp. Laws § 777.46(1)(e) (value of property obtained, damaged, lost, or destroyed). He therefore contends that he is entitled to resentencing.

Petitioner's argument arises out of the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make

23

the guidelines advisory only. *Id.* at 520-21 (relying on *Booker*, 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

Petitioner's sentence preceded the *Lockridge* decision by a few months. His sentence therefore originally depended on mandatory sentencing guidelines. The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Lockridge*, 870 N.W.2d at 523. Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision. Accordingly, the Michigan Court of Appeals applied *Lockridge* when it decided Petitioner's appeal. The fact that *Lockridge* applied to Petitioner's case, however, did not mean that Petitioner was automatically entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id.* at 522 (footnote omitted). In drawing those lines, the *Lockridge*

court also effectively identified those defendants whose sentences did not violate the Sixth Amendment.

If a defendant's sentence represented an upward departure from the mandatory guidelines minimum sentence range, the sentence was not constrained by the legislative mandate. Instead, it was entirely an exercise of judicial discretion. Similarly, if "judge found" facts were eliminated from the scoring of the guidelines, and the guidelines rescored using only facts found by the jury or admitted by the defendant yielded the same minimum sentence guideline range, any error would be harmless. The act of selecting a sentence within the range was entirely an exercise of judicial discretion that was never constrained by the legislative mandate.

The Michigan Court of Appeals reviewed the trial court's scoring of the sentencing guidelines offense variable to determine if reliance on only "jury-found" facts would change the result.[3] The appellate court found that the trial court had unconstitutionally used judicially found facts to score OV 3, OV 4, OV 7, and OV 13. The court concluded that, absent the judicially found facts, the sentencing guidelines would have been 81 to 135 months, rather than 171 to 285 months, the range used at Petitioner's sentencing. The court therefore remanded the case under *Lockridge*, 870 N.W.2d at 522-23 (adopting analysis from *United States v. Crosby*, 397 F.3d 103, 117-18 (2d Cir. 2005)), for a determination of whether, under the circumstances existing at the time of the original sentence and absent the unconstitutional constraint, the court would have imposed a materially different sentence. *Quinn*, 2016 WL 3767491, at *6-7.

On remand, in an opinion and order issued on September 20, 2016, the trial court concluded that resentencing was not required, because, had the court known at the time of

---

[3] The *Apprendi* Court excluded from the scope of its new rule factual determinations regarding prior convictions. *Apprendi*, 530 U.S. at 490. Thus, scoring "prior record" variables under Michigan's sentencing guidelines does not implicate Sixth Amendment protections.

sentencing that the guidelines were advisory, the sentence would not have been materially different.  Such an exercise of judicial sentencing discretion under advisory guidelines, subject to a review for reasonableness, does not implicate the Sixth Amendment.  *Booker*, 543 U.S. at 233 (recognizing that, if sentencing guidelines are "merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment").

Because the trial court reconsidered its sentence knowing that the guidelines were merely advisory and found that it would have imposed the same sentence, Petitioner's current sentence does not violate the Sixth Amendment.  Accordingly, Petitioner is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to

26

proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated: November 19, 2019                                   /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                               UNITED STATES DISTRICT JUDGE